**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTY M. BULLARD,** *Individually and as Parent and Natural Guardian of L.B., a Minor,* | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | |
| **PAUL H. DAVENPORT; and UNIFIED DOOR & HARDWARE GROUP, LLC.** | : | **NO. 23-4534** |
| *Defendants.* | : | |

**Perez, J.** **September 3, 2026**

**MEMORANDUM**

Plaintiffs Christy M. Bullard and her minor son, L.B., brought this action against Defendants Paul H. Davenport and Unified Door & Hardware Group, LLC ("Unified") following an October 2021 motor vehicle collision on I-76 in Lower Merion Township, Pennsylvania. ECF No. 27. Plaintiffs assert negligence claims against Davenport and Unified and seek punitive damages. The punitive damages requests are based on Davenport's operation of a Unified vehicle in the course and scope of his employment while his Pennsylvania driving privileges were suspended and Unified's alleged failure to verify his driving status before permitting him to operate a company vehicle. ECF No. 39-2 at 2; ECF No. 39-6 at 2–4. Defendants move for partial summary judgment on the punitive damages requests only. ECF No. 39. Viewing the evidence and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that the record would not permit a reasonable jury to find that either Defendant subjectively appreciated and consciously disregarded an accident-producing risk, as Pennsylvania law requires for punitive damages. *Hutchison v. Luddy*, 582 Pa. 114, 124, 870 A.2d 766, 772 (2005); *Martin v. Johns-Manville Corp.*,

508 Pa. 154, 170–71, 494 A.2d 1088, 1096–97 (1985). Accordingly, the Court will grant Defendants' motion.

## I. Factual Background

On October 22, 2021, at approximately 1:28 p.m., three vehicles were involved in a rear-end collision on Interstate 76 in Lower Merion Township, Pennsylvania. ECF No. 39-9 at 2. At the time of the collision, Davenport was operating a Unified-owned Ford truck within the course and scope of his employment. *Id.* at 2-5; ECF No. 39-2 at 2. The parties dispute aspects of the collision sequence and Davenport's driving conduct,[1] however, those disputes do not impact the disposition of the punitive damages question.

On November 23, 1999, Davenport pled guilty in the Court of Common Pleas of Cumberland County to driving under the influence, reckless driving, and driving without a license. ECF No. 39-4. The Pennsylvania Department of Transportation ("PennDOT") suspended his Pennsylvania driving privileges for one-year effective December 7, 1999 and imposed a consecutive six-month suspension effective December 7, 2000. ECF No. 39-6. PennDOT restored those privileges on October 20, 2018, but suspended them again effective November 21, 2019. *Id.* at 3-4.

The parties dispute whether Davenport knew before the collision that his Pennsylvania driving privileges had again been suspended. ECF No. 39-10 at 59:5–10, 60:8–61:23. However, because the PennDOT record reflects that official notice was mailed and the Court must draw reasonable inferences in Plaintiffs' favor, the Court assumes for purposes of this motion—without deciding—that Davenport knew his Pennsylvania driving privileges were suspended. ECF No. 39-

---

[1] The police report on the crash states that, in heavy traffic, Davenport was traveling too fast and too closely behind the vehicles ahead of him, struck Bullard's vehicle, and pushed it into a third vehicle. *Id.* at 8–9. Defendants dispute that sequence and contend that a third vehicle first struck Bullard's vehicle and that Davenport then struck the third vehicle. ECF No. 39-2 at 2–3.

6 at 4. John Hoffman, PennDOT's designated representative, testified that the November 2019 suspension resulted solely from Davenport's failure to finish paying fines associated with the 1999 matter, not from an indication that he was unable to operate a vehicle safely. ECF No. 39-13 at 84:8–17, 86:8–16, 87:4–10.

Davenport testified that he possessed a valid New Jersey driver's license on the date of the collision, and the crash report identifies a New Jersey license with an expiration date of March 28, 2023. ECF No. 39-10 at 60:1–7, 64:8–19; ECF No. 39-9 at 3. He also testified that he was not asked about his driving or criminal history when Unified hired him. Before he began driving a company vehicle, his supervisors discussed his driving record with him, but his earlier suspension was not discussed and he was not asked whether his driving privileges had previously been revoked. ECF No. 39-10 at 19:12–23, 23:5–20. Unified's corporate representative, Darin Tuch, testified that Davenport's personnel file contained New Jersey identification cards and a social security card, but not a copy of a driver's license valid on the collision date. ECF No. 41-1, Tuch Dep. 31:11–33:23.

Before the collision, Unified did not conduct a criminal-background or motor-vehicle-record check before hiring Davenport or permitting him to operate a company vehicle. *Id.* at 21:18–24. Nor did Unified maintain documented procedures for verifying employees' driver's licenses before permitting them to operate company vehicles. *Id.* at 28:8–29:5. Unified's handbook required employees for whom driving was an essential duty to maintain a valid driver's license and an acceptable driving record, but Unified did not begin conducting motor-vehicle-record checks until late 2022. *Id.* at 21:18–22:18. Tuch also testified that verifying an employee's driver's license is a basic safety measure, that employers should check driving histories before assigning

company vehicles, and that allowing an employee with suspended driving privileges to operate a company vehicle poses a risk to the public. *Id.* at 48:20–50:23, 56:14–57:19.

No evidence indicates that a Unified employee actually knew before the collision that Davenport's Pennsylvania driving privileges were suspended. ECF No. 40-11 at 29:23–30:2; ECF No. 40-12 at 43:11–18. Tuch and Davenport's supervisors testified that Unified would not have permitted Davenport to operate a company vehicle had it known of the suspension. ECF No. 41-1, Tuch Dep. 21:22–24; ECF No. 40-11 at 35:3–18; Buttari Dep. 29:2–22.

## II. Rule 56 Legal Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under the governing law, and a dispute is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies that burden, the nonmoving party must identify specific facts showing a genuine issue for trial and may not rest on allegations or denials in the pleadings. *Id.* at 324. The Court must view the evidence and draw all reasonable inferences in the nonmoving party's favor; it may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255.

## III. Discussion

### A. Punitive Damages Standard

Under Pennsylvania law, punitive damages are reserved for exceptional cases involving outrageous conduct. *Hutchison*, 582 Pa. at 121–22, 870 A.2d at 770; *SHV Coal*, Inc. v. Cont'l Grain Co., 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). A plaintiff seeking punitive damages

based on reckless indifference must show that the defendant subjectively appreciated the risk of harm and acted, or failed to act, in conscious disregard of that risk. *Hutchison*, 582 Pa. at 124, 870 A.2d at 772. Negligence, even gross negligence, is insufficient. *Id.* at 122–24, 870 A.2d at 771–72. Courts applying Pennsylvania law generally do not permit punitive damages based only on ordinary traffic negligence or routine Vehicle Code violations. *Babenko v. Dillon*, No. 19-199, 2019 WL 3548833, at *3 (E.D. Pa. Aug. 5, 2019); *Carson v. Tucker*, No. 20-399, 2020 WL 4015244, at *4 (E.D. Pa. July 16, 2020). Those courts also consider whether there is a nexus between the allegedly outrageous conduct and the cause of the accident. *Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807, 810 (E.D. Pa. 2023).

**B. The Record Does Not Support Punitive Damages Against Davenport.**

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that no reasonable jury could find that Davenport acted with the subjective appreciation and conscious disregard required for punitive damages.

For purposes of the motion, the Court assumes that Davenport knew his Pennsylvania driving privileges were suspended, continued to drive Unified's vehicle in Pennsylvania, and did not inform Unified of the suspension. ECF No. 40-10 at 75. Those assumed facts do not establish the state of mind required for punitive damages. The relevant question is whether Davenport subjectively appreciated that driving under the circumstances created a substantial risk of physical harm to others. *Hutchison*, 582 Pa. at 124, 870 A.2d at 772.

The record contains no evidence that Davenport knowingly drove while impaired, fatigued, medically compromised, or otherwise aware of a condition that directly affected his ability to drive safely. Furthermore, unlike the cumulative evidence in *Brown v. Brooks*, the evidence here does not include a combination of licensing, experience, training, testing, regulatory, speed, and

vehicle-condition deficiencies. No. 23-2966, slip op. at 6–9 (E.D. Pa. Oct. 31, 2024) (denying summary judgment where evidence concerning driver's questionable licensure, lack of commercial-truck experience, absence of testing and training, failure to satisfy federal qualification requirements, unsafe speed, and operation of an unsafe truck, together, supported a finding of reckless indifference). Here, Davenport's November 2019 Pennsylvania suspension resulted from unpaid fines and costs arising from decades-old convictions, not a contemporaneous determination that he posed an unsafe-driving risk. ECF No. 40-13 at 84:12–17, 86:8–16. A jury could find that Davenport knowingly violated Pennsylvania licensing requirements, but that finding would not support a reasonable inference that he consciously appreciated an accident-producing danger.

The lack of a connection between the suspension and the collision further supports that conclusion. *See Villagran*, 698 F. Supp. 3d at 810. The record does not connect Davenport's license suspension to the risk that produced the collision. The police report attributes the collision to Davenport's excessive speed and failure to maintain a safe following distance, but nothing in the record suggests that the suspension reflected an impairment or other safety deficiency that contributed to the collision. ECF No. 39-9 at 8–9; ECF No. 39-13 at 84:8–17, 86:8–16, 87:4–10. Plaintiffs instead argue that Davenport would not have been operating Unified's vehicle had he disclosed the suspension or had Unified discovered it. ECF No. 41-2 at 13. Shields confirmed that Unified would not have allowed Davenport to operate a company vehicle had it known of the suspension. ECF No. 39-11 at 35:3–12. That reasoning establishes a but-for relationship, but not the required nexus between the allegedly outrageous conduct and the injury-producing risk. *See Villagran*, 698 F. Supp. 3d at 810; *Shechtman v. U.S. Xpress Inc.*, No. 4:23-CV-1156, slip op. at 13–16 (M.D. Pa. Jan. 22, 2026).

The Court therefore concludes that the evidence would not permit a reasonable jury to award punitive damages against Davenport. Although the record would permit an inference that Davenport knowingly violated Pennsylvania's licensing requirements, that evidence is insufficient to establish the heightened mental state required by Pennsylvania law. *Hutchison*, 582 Pa. at 124, 870 A.2d at 772. The absence of a nexus between the suspension and the accident-producing risk reinforces that conclusion. See *Villagran*, 698 F. Supp. 3d at 810. Accordingly, the Court will enter summary judgment for Defendants on Plaintiffs' punitive-damages request against Davenport.

**C. The Record Does Not Support Direct Punitive Liability Against Unified.**

Viewing the evidence in the light most favorable to Plaintiffs, the Court likewise concludes that the record would not permit a reasonable jury to find that Unified acted with the subjective appreciation and conscious disregard required for punitive damages.

Viewed in Plaintiffs' favor, the evidence would permit a jury to find that Unified failed to implement prudent driver-screening and vehicle-assignment practices. ECF No 41-1, Tuch Dep. 21:18–24, 22:12–18, 28:3–15. That evidence does not establish the heightened state of mind required for punitive damages. The relevant inquiry is not whether Unified should have verified Davenport's driving status or implemented better safety procedures, but whether Unified subjectively appreciated and consciously disregarded a known risk. *Hutchison*, 582 Pa. at 124, 870 A.2d at 772.

The record contains no evidence that a Unified employee actually knew before the collision that Davenport's Pennsylvania driving privileges were suspended. Davenport's supervisors testified that they were unaware of the suspension, and no evidence indicates that Unified knew of Davenport's prior Pennsylvania convictions or otherwise appreciated that assigning him a company vehicle created a particular risk of a rear-end collision. ECF No. 39-11 at 29:23–30:2;

ECF No. 39-12 at 43:11–18. Tuch's later acknowledgment that Unified should have verified Davenport's driving status addresses what Unified should have done as a matter of corporate practice. The supervisors testified they agree with general propositions that allowing an employee with a suspended license to drive a company vehicle could endanger the public. ECF No. 39-11 at 19:3–10, 36:13–37:3; ECF No. 39-12 at 29:2–22, 43:19–44:10. Those acknowledgments describe the risk of conduct known to involve a suspended driver; they do not show that Unified knew of Davenport's suspension before the collision. The evidence may support negligence, but it does not establish the subjective appreciation and conscious disregard necessary for punitive damages.

Nor does the evidence establish the requisite nexus. The evidence supports, at most, but-for causation. Plaintiffs' theory is that Unified's failure to verify Davenport's driving status allowed him to operate a company vehicle and that, had Unified discovered the suspension, Davenport would not have been on the road. ECF No. 40-11 at 35:3–18. It does not connect Unified's alleged omissions to the injury-producing risk. *See Villagran*, 698 F. Supp. 3d at 810.

The record here is also materially narrower than the records in *Brown*, *Burke*, and *Stemrich*. Those cases involved combinations of accident-related driving conduct, training or regulatory deficiencies, and employer notice beyond a failure to verify licensing status. *See Brown*, No. 23-2966, slip op. at 6–9; *Burke v. Transam Trucking, Inc.*, 605 F. Supp. 2d 647, 655–57 (M.D. Pa. 2009); *Stemrich v. Zabiyaka*, No. 1:12-CV-1409, slip op. at 5–9 (M.D. Pa. Feb. 21, 2014). Even viewing the evidence in Plaintiffs' favor, no reasonable jury could infer that Unified's omission contributed to the manner in which the collision occurred or that Unified consciously disregarded a known accident-producing risk.

Accordingly, no reasonable jury could conclude that Unified subjectively appreciated and consciously disregarded a known accident-producing risk. The record may support a finding that

Unified's driver-screening practices were deficient. It does not, however, permit an award of punitive damages against Unified based on Unified's own conduct.

**D. Unified Cannot Be Held Vicariously Liable for Punitive Damages.**

Pennsylvania law recognizes that an employer may be held vicariously liable for punitive damages based on an employee's conduct even when the employer's own conduct would not independently support punitive damages. *Livingston v. Greyhound Lines, Inc.*, 208 A.3d 1122, 1132–33 (Pa. Super. Ct. 2019); *Dillow v. Myers*, 916 A.2d 698, 702–03 (Pa. Super. Ct. 2007). That principle presupposes, however, that the employee's conduct is itself sufficient to support punitive damages. *Livingston*, 208 A.3d at 1132–33.

As discussed above, the evidence would not permit a reasonable jury to award punitive damages against Davenport. Plaintiffs' request to hold Unified vicariously liable for punitive damages is derivative of Davenport's conduct, it therefore necessarily fails as well. *Livingston*, 208 A.3d at 1132–33; *Dillow*, 916 A.2d at 702–03. Accordingly, the Court will enter summary judgment for Defendants on Plaintiffs' vicarious punitive damages request against Unified.

**E. Conclusion**

For these reasons, the Court concludes that no reasonable jury could find that Davenport or Unified subjectively appreciated and consciously disregarded an accident-producing risk. Since the evidence would not support punitive damages against Davenport, Plaintiffs' derivative request to hold Unified vicariously liable for punitive damages also fails. Accordingly, the Court will grant Defendants' motion for partial summary judgment as to Counts III and IV.